# In the United States Court of Federal Claims

No. 21-1279
(Filed Under Seal: August 20, 2021)
(Reissued for Publication: August 27, 2021)[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SWIFT & STALEY, INC., | \* |
| Plaintiff, | \* |
| v. | \* |
| THE UNITED STATES, | \* Bid Protest; Motion for Judgment on the Administrative Record; SBA Size Determination; Regulatory Interpretation |
| Defendant, | \* |
| and | \* |
| AKIMA INTRA-DATA, LLC, | \* |
| Defendant-Intervenor. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Richard Paul Rector*, DLA Piper US LLP, Washington, DC, counsel for Plaintiff.

*Evan Wisser*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

*Stephen Philip Ramaley*, Miles & Stockbridge PC, Tysons Corner, VA, counsel for Defendant-Intervenor

## ORDER AND OPINION

**DIETZ, Judge**

Incumbent contractor, Swift & Staley, Inc. ("SSI"), protests a decision by the Office of Hearings and Appeals ("OHA") of the Small Business Administration ("SBA") affirming a determination by the SBA Area Office that SSI is "other than small" for the purposes of its qualification for a small-business set-aside contract. OHA affirmed the determination on the basis that SBA regulations require SSI to assume its proportionate share of receipts generated by a populated joint venture in which SSI has an ownership interest. Because the Court finds that

---

[1] This Opinion was originally filed under seal on August 20, 2021 to provide the parties an opportunity to propose appropriate redactions. ECF No. 38. On August 26, 2021, Plaintiff filed a joint status report with proposed redactions. ECF No. 39. The Court accepts the proposed redactions, and the redacted language is replaced as follows: "[XXX]."

the OHA decision is inconsistent with the plain language of the regulations, Plaintiff's motion for judgment on the administrative record is **GRANTED**, and Defendant's and Defendant-Intervenor's respective cross motions for judgment on the administrative record are **DENIED**. This protest is **REMANDED** to the OHA for further proceedings consistent with this opinion.

I.   BACKGROUND

   A.   **Regulatory Framework**

Under the Small Business Act, the SBA is responsible for promulgating "detailed definitions or standards by which a business concern may be determined to be a small business concern." 15 U.S.C. § 632(a)(2)(A) (2018). In accordance with its statutory authority, the SBA sets "size standards" that determine if a business concern is eligible for "[g]overnment programs and preferences reserved for 'small business' concerns." 13 C.F.R. § 121.101 (2020).[2] To bid on a contract, a concern must self-certify that it meets the size standard for the particular solicitation. 13 C.F.R. § 121.405(a) (2020). The size of a concern is determined as of the date when the concern submits a written self-certification. 13 C.F.R. § 121.404(a) (2020).

Part of a concern's size calculation involves a determination of its affiliations. *See* 13 C.F.R. § 121.103 (2020). Under the "General Principles of Affiliation," business concerns are considered affiliates when "one controls or has the power to control the other, or a third party or parties controls or has the power to control both." § 121.103(a)(1). In general, a concern must include the receipts of its affiliates when calculating its size. 13 C.F.R. § 121.104(d)(1) (2020). The SBA has promulgated specific regulations that govern affiliation based on joint ventures, which provide, among other things, how a joint venture and its partners calculate receipts when determining size. *See* § 121.103(h); § 121.103(h)(5). Paragraph (h) of 13 C.F.R. § 121.103 ("Paragraph (h)") defines the term "joint venture" and establishes requirements for a concern to qualify as a joint venture "[f]or the purposes of [the] provision."

When determining the size of a joint venture for a particular solicitation, the partners to the joint venture are treated as affiliates and must aggregate their receipts in calculating the size of the joint venture. § 121.103(h)(2). An exception to this regulation allows a joint venture to avoid aggregating the receipts of its partners and to qualify for a small business set-aside contract if each of its partners is considered small under the applicable size standard for that solicitation. § 121.103(h)(3)(i). For the purposes of its own size determination, a concern that is a partner to a joint venture "must include in its receipts its proportionate share of joint venture receipts" under 13 C.F.R. § 121.103(h)(5) ("Subparagraph (h)(5)").

This protest is rooted in a 2016 change to Paragraph (h) and the resultant impact on a concern's size determination under Subparagraph (h)(5). Prior to the 2016 change, populated joint ventures met the requirements of Paragraph (h), which stated that joint ventures "may (but

---

[2] Except where stated otherwise, the Court cites to the SBA regulations in effect when SSI submitted its written self-certification on April 16, 2020. *See* 13 C.F.R. §121.404(a). AR 78, 83, 3855; Pl.'s Mem. at 5.

need not) be populated[.]"[3]  *See* 13 C.F.R. § 121.103(h) (2015). After the 2016 change, Paragraph (h) required that joint ventures "may *not* be populated." § 121.103(h) (emphasis added). As a result of this change, under the regulations in effect when SSI self-certified in 2020, populated joint ventures no longer met the requirements set forth in Paragraph (h).

### B.  Factual Background

SSI is an employee-owned company headquartered in Paducah, Kentucky. Pl.'s Mem in Supp. Of Its Mot. for J. on the Administrative R. at 2, ECF No. 26 [hereinafter Pl.'s Mem.]; Compl. ¶ 13, ECF No. 1. SSI has performed recurring facility support service contracts at the Paducah gaseous diffusion plant since 2005. Pl.'s Mem. at 1; Decl. of C. Leon Owens ¶ 4, ECF No. 26-1. In 2015, SSI and another company, North Wind Solutions, LLC, formed Portsmouth Mission Alliance, LLC ("PMA"), a populated joint venture, for the sole purpose of performing infrastructure support services at the gaseous diffusion plant in Portsmouth, Ohio. *See* Compl. ¶ 21; AR 3741. PMA was awarded the support services contract for the Portsmouth plant in 2016, and, at the time of SSI's self-certification, PMA was performing under its contract. AR 3722-23; Pl.'s Mem. at 3. SSI holds a [XXX] ([XXX]%) minority ownership interest in PMA and represents [XXX] of [XXX] PMA board members.[4] AR 3713, 3775, 3826.

On February 3, 2020, the Department of Energy ("DOE") issued a solicitation for a new infrastructure support services contract (the "Solicitation") at the Paducah plant. AR 88. The Solicitation was set-aside for a small business concern that qualified under the applicable size standard, which has a $41.5 million size limit. AR 943. SSI, the incumbent contractor, submitted a proposal on April 16, 2020, which included a self-certification that SSI was below the size limit. AR 78, 83, 3855; Pl.'s Mem. at 5. DOE awarded the contract to SSI on December 10, 2020. AR 9.

### C.  Procedural History

Shortly after the award, Akima Intra-Data, LLC ("AID"), an eligible but unsuccessful offeror, filed a size protest with the SBA Area Office ("Area Office") challenging SSI's size. AR 3. AID argued that, when SSI's "receipts from its own business activity" are combined with its "significant ownership interest" in PMA, SSI exceeds the size standard for the Solicitation. AR 3784. SSI responded by explaining that PMA is a *populated* joint venture, which is "not allowable under SBA's current rules and therefore does not . . . require SSI to include its proportionate share of receipts from PMA as required for joint ventures [under Subparagraph (h)(5)]." AR 3785.

The Area Office found "that since PMA is a joint venture, actively generating revenues for its owners which include SSI, SSI is required to follow the regulations…[and] SSI's

---

[3] A populated joint venture uses its own employees to perform the contract, whereas an unpopulated joint venture uses employees of the joint venture partners to perform the contract. *See* § 121.103(h); *see also Senter, LLC v. United States*, 138 Fed. Cl. 110, 112 (2018).

[4] The SBA Area Office stated in its size determination that SSI's minority ownership does not "otherwise creat[e] affiliation between SSI and PMA[.]" *See* AR 3789. SSI does not challenge the SBA Area Office on this point, and it is not at issue in this protest. *See* Pl.'s Mem. at 16 n.8.

proportionate share of PMA's receipts must be included when calculating SSI's size in accordance with [Subparagraph (h)(5)]." AR 3789. The Area Office further noted "that even if SSI believes PMA is not considered a joint venture as of the date size is determined in the instant case and consequently SSI does not have to include a proportion of the receipts as required for joint ventures at [Subparagraph (h)(5)]; SSI's minority ownership, while not otherwise creating affiliation between SSI and PMA, still results in receipts from PMA which must be included in SSI's calculation of average annual receipts in accordance with 13 C.F.R. § 121.104(a)." *Id*. The Area Office determined that SSI was required to assume a [XXX] percent ([XXX]%) proportionate share of PMA's receipts based on SSI's ownership interest, and, as a result, exceeded the $41.5 million threshold. AR 3790.

SSI appealed the Area Office's size determination to the OHA arguing that the size determination was "based on clear errors of law" because the Area Office "fail[ed] to give proper weight to the fact that PMA is a *populated* [joint venture]."AR 3800 (emphasis in original). Finding no clear error in the Area Office's analysis, OHA affirmed the size determination. AR 3909. OHA concluded that the SBA regulations in place at the time of SSI's size determination "stipulate that 'a concern must include a proportionate share of joint venture receipts' without regard to whether the joint venture is populated or unpopulated, and irrespective of whether the joint venture meets all requirements for the joint venture partners to be excepted from affiliation." AR 3907. OHA further concluded that PMA "is still a 'joint venture' for purposes of calculating size of the joint venture's [partners]." *Id*.

SSI then filed this protest. *See* Compl. at 1. SSI argues that, by affirming the Area Office's determination, the OHA acted "arbitrarily and capriciously and rendered a decision not in accordance with the law." Pl.'s Mem. at 10. SSI specifically argues that OHA failed to recognize that joint venture partners "are not required to assume a proportionate share of the joint venture's receipts unless the joint venture is compliant with the requirements of [Paragraph (h)]." *Id*. Because PMA is a populated joint venture, SSI argues that PMA "is not compliant with the requirements of the current version of [Paragraph (h)]" and that, therefore, SSI is not required under Subparagraph (h)(5) to assume a proportionate share of PMA receipts for its size purposes.[5] *Id*.

## II.   JURISDICTION AND STANDING

The Tucker Act grants this Court authority to render judgment on an action "by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1) (2018). The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process." *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380 (Fed. Cir. 2012). The Federal Circuit has held that challenges to decisions by the OHA fall "within the scope of jurisdiction granted under the Tucker Act" because such challenges "are actions 'in connection

---

[5] SSI argues, in the alternative, that, if it is required to assume a proportionate share of PMA's receipts, OHA "committed clear errors of fact and law by adopting the narrow view that the appropriate 'proportionate share" of a joint venture's annual receipts . . . is solely tied to the respective ownership interests of the joint venture's small business members." Pl.'s Mem. at 17. Because the Court finds that SSI is not required to assume a proportionate share of PMA's receipts under Subparagraph (h)(5), the Court does not address this argument.

with a proposed procurement.'" *Palladian Partners v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015). Accordingly, SSI's challenge of OHA's affirmation of the Area Office's size determination falls within this Court's subject-matter jurisdiction.

To maintain a bid protest in this Court, the protestor must establish its standing as an interested party in the procurement. § 1491(b)(1); *see Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). A protestor is an "interested party" if it is "an actual or prospective bidder whose direct economic interest would be affected by the award of the contract." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013). A direct economic interest is shown if the protestor suffered "a non-trivial competitive injury which can be redressed by judicial relief." *CGI Fed. Inc. v. United States*, 779 F.3d 1346, 1351 (Fed. Cir. 2015) (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361-62 (Fed. Cir. 2009)). SSI has a clear economic interest because it was the awardee under the Solicitation and would remain the awardee but for OHA's decision. SSI, therefore, is an interested party that has standing to bring this protest.

### III.   LEGAL STANDARDS

This Court reviews agency decisions in bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garuf v. United States*, 238 F.3d. 1324, 1332 (Fed. Cir. 2001). To succeed, the protestor must show that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *Bannum*, *Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Under this deferential standard, this Court may set aside a procurement activity if either "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332.

This Court gives deference to an agency's interpretation of its own regulations if the regulation is silent or ambiguous. *Meeks v. West*, 216 F.3d 1363, 1366 (Fed. Cir. 2000) (citing *NationsBank v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995)). This Court affords "special deference" to decisions by the OHA due to the SBA's "quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme." *Baird Corp. v. United States*, 1 Cl. Ct. 662, 666 (1983); *see also*, *Eagle Design & Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002). Deference, though, is inappropriate when the agency's interpretation is "plainly erroneous or inconsistent with the regulation." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (quoting *Auer v. Robbins*, 519 U.S. 452, 453 (1997)).

### IV.   DISCUSSION

The Court finds that the plain language of Paragraph (h) contradicts OHA's decision that SSI is required under Subparagraph (h)(5) to assume a proportionate share of PMA's receipts. Under the regulations in effect at the time of SSI's self-certification, PMA did not meet the requirement of Paragraph (h) that joint ventures "may not be populated," and, thus PMA did not qualify for treatment as a joint venture under Paragraph (h) and its subparagraphs.

This Court construes a regulation in the same way as a statute. *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1346-47 (Fed. Cir. 2005) (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 401, 414-15 (1945)). The Court's analysis of a regulation begins with the plain language of the regulation. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 459 (2002) ("As in all statutory construction cases, we begin with the language of the statute."). If the regulatory language is clear and unambiguous, then the Court does not need to conduct any further inquiry. *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006). The Court considers "the plain language of the regulation, the common meaning of the terms, and the text of the regulation both as a whole and in the context of its surrounding sections." *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1316 (Fed. Cir. 2017). When a regulation provides a definition, the Court must follow that definition, even if it varies from the term's customary meaning. *See Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 776 (2018); *Burgess v. United States*, 553 U.S. 124, 129 (2008). Additionally, "[i]t is axiomatic that the statutory definition of the term excludes unstated meanings of that term." *Meese v. Keene*, 481 U.S. 465, 484 (1987).

The Court turns to the plain language of the relevant regulations in effect when SSI submitted its self-certification on April 16, 2020. *See* 13 C.F.R. § 121.404(a); AR 78. Section 121.103 provides in relevant part:

> (h) Affiliation based on joint ventures. A joint venture is an association of individuals and/or concerns with interests in any degree or proportion consorting to engage in and carry out no more than three specific or limited-purpose business ventures for joint profit over a two year period, for which purpose they combine their efforts, property, money, skill, or knowledge, but not on a continuing or permanent basis for conducting business generally. . . . *For purposes of this provision* and in order to facilitate tracking of the number of contract awards made to a joint venture, a joint venture: Must be in writing and must do business under its own name; must be identified as a joint venture in the System for Award Management (SAM); may be in the form of a formal or informal partnership or exist as a separate limited liability company or other separate legal entity; and, if it exists as a formal separate legal entity, *may not be populated* with individuals intended to perform contracts awarded to the joint venture (i.e., the joint venture may have its own separate employees to perform administrative functions, but may not have its own separate employees to perform contracts awarded to the joint venture).
>
> . . . .
>
> > (5) For size purposes, a concern must include in its receipts its proportionate share of joint venture receipts, and in its total number of employees its proportionate share of joint venture employees.

§ 121.103 (emphasis added).

By defining and setting forth the requirements of a joint venture "for the purposes of this provision," SBA refined the meaning of "joint venture" as it applies to Paragraph (h) and its subparagraphs. As structured, Paragraph (h) serves as a parent paragraph under which its subparagraphs operate in reliance on its terminology. It would be contrary to the plain language of a regulation for a paragraph and its subparagraphs to apply different meanings of the same term, especially when the parent paragraph itself establishes the meaning of that term. Thus, any use of the term "joint venture" within Paragraph (h) and its subparagraphs must refer *only* to a joint venture that meets the definition and requirements of Paragraph (h). Paragraph (h) specifically excludes populated joint ventures from the meaning of "joint venture" for the purposes of the provision, and, as such, populated joint ventures fall outside the scope of the provision. Consequently, a partner to a populated joint venture is not required to "include in its receipts its proportionate share of joint venture receipts" under Subparagraph (h)(5).

When SSI conducted its size calculation, it was required to analyze whether any of its business relationships resulted in affiliation and to account for the receipts of its affiliates. *See* § 121.103(a)(6). SSI's only relationship requiring analysis was its minority ownership in PMA. AR 3721 ("Swift & Staley Inc. does not hold any ownership interests in other firms besides PMA, nor does it manage any other firms."). PMA was created as a populated joint venture in 2015 and remained populated when SSI submitted its self-certification in 2020. AR 3722, 3741. Under Subparagraph (h)(5), SSI was required to include in its size calculation its proportionate share of joint venture receipts but only to the extent that the joint venture conformed to the definition and requirements under Paragraph (h). Because Paragraph (h) expressly excluded populated joint ventures, SSI was correct not to treat PMA as a joint venture under Paragraph (h). It follows that, since PMA did not qualify for treatment as a joint venture under Paragraph (h), SSI did not need to include in its size calculation its proportionate share of PMA's receipts as required by Subparagraph (h)(5).

In conflict with this plain reading, OHA concluded that the regulations "stipulate that 'a concern must include a proportionate share of joint venture receipts' without regard to whether the joint venture is populated or unpopulated, and irrespective of whether the joint venture meets all requirements for the joint venture partners to be excepted from affiliation." AR 3907. In so concluding, OHA applied the joint venture requirements of Paragraph (h) inconsistently to different subparagraphs. *See Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 501 (1998) (recognizing the "established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning"); *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.").

OHA explained that the 2016 regulatory change "indicated . . . that the parties to a populated joint venture would no longer be eligible for an exception to the general rule that they are affiliated with each other with regard to the performance of that contract." AR 3907. The referenced "[e]xception to affiliation for certain joint ventures" is found in subparagraph (h)(3) of 13 C.F.R. § 121.103 ("Subparagaph (h)(3)"), which provides three instances in which a joint venture is exempt from the general rule of affiliation between its partners for its size determination. *See* § 121.103(h)(3)(i)-(iii). OHA applied the requirement of Paragraph (h) that a joint venture "may not be populated" to the use of the term "joint venture" in Subparagraph

(h)(3) to conclude that "a populated joint venture would no longer be eligible" for the exception in Subparagraph (h)(3).

Contradictorily, OHA then ruled that the joint venture requirements of Paragraph (h) did *not* apply to the use of the term "joint venture" in Subparagraph (h)(5), which OHA concluded applied to partners of populated and unpopulated joint ventures alike. Contrary to OHA's characterization, Paragraph (h) did not list "requirements for . . . joint venture partners to be excepted from affiliation," AR 3907; rather, Paragraph (h) listed requirements for a joint venture "for the purposes of this provision" in its entirety, including each of its subparagraphs. *See* § 121.103(h). The exception to affiliation in Subparagraph (h)(3) is only a single part of the provision covered by the umbrella of Paragraph (h). Nothing in the regulatory text supports the application of a broader meaning of "joint venture" in Subparagraph (h)(5). In both Subparagraph (h)(3) and Subparagraph (h)(5), the term is used without any further qualification or clarification of its meaning, and OHA's determination would require reading into Subparagraph (h)(5) the terms "unpopulated" and "populated." Despite OHA's conclusion otherwise, there is, therefore, an "inconsistency between SBA's requirements, on the one hand, that only unpopulated joint ventures will be eligible for new set-aside contract awards, while, on the other hand, . . . instructing that all joint venture partners, including partners of 'populated joint ventures, must include their proportionate share of joint venture receipts." AR 3908. The inconsistency arises from selective application of the joint venture requirements in Paragraph (h) to Subparagraph (h)(3) and not to Subparagraph (h)(5).

OHA's conclusion that, following the 2016 regulatory change, PMA "is still a 'joint venture' for purposes of calculating size of the joint venture's members," AR 3907, similarly lacks a basis in the regulatory text. As more explicitly argued by Defendant, OHA seemingly drew this inference from the fact that "PMA could still continue to perform its existing contracts," *id.*, under § 121.404(g). *See* Def.'s Cross-Mot. for J. Upon the Administrative R. at 9, ECF No. 29 [hereinafter Def.'s Cross-MJAR]. Section 121.404(g) states that when a business concern is determined to be small at the time of its self-certification, the concern "is generally considered to be a small business throughout the life of that contract." § 121.404(g) (2020). Defendant argues that this regulation requires SSI to apply PMA's 2016 size determination, as a small business joint venture under the regulations existing prior to the 2016 change, to SSI's own size determination conducted in 2020. *See* Def.'s Cross-MJAR at 9.

However, "SBA determines the size status of a concern, *including its affiliates*, as of the date the concern submits a written self-certification . . . ." § 121.404(a) (emphasis added). SSI, therefore, was required to evaluate its relationship to PMA under the regulations in place at the time of SSI's self-certification, not that of PMA's. At the time of SSI's self-certification, PMA did not meet the requirements of a joint venture under Paragraph (h) and, for the reasons explained above, SSI was not required to assume a proportionate share of PMA's receipts under Subparagraph (h)(5). While the 2016 regulatory change did not interfere with PMA's ability to continue performing its contract as a small business, PMA's status applies to PMA only for the purpose of its contract performance. The plain language of Section 121.404(g) does not support expanding its application to require SSI to treat PMA as a joint venture under Paragraph (h) for the purpose of SSI's self-certification—when, at the time of SSI's self-certification, PMA clearly did not meet the requirements of a joint venture under Paragraph (h).

In sum, to adopt OHA's interpretation of Paragraph (h) in this instance, the Court would need to disregard the plain language of the regulations. Paragraph (h) firmly establishes the meaning of the term "joint venture," and that meaning must be applied consistently to its subparagraphs. When the plain language is applied, SSI was not required to assume a proportionate share of PMA's receipts under Subparagraph (h)(5) when SSI self-certified in 2020 because, at that time, PMA did not qualify for treatment as a joint venture under Paragraph (h).

Nevertheless, SSI, as a minority owner of PMA, may still be required under SBA regulations to assume a share of PMA's receipts for its size determination purposes. For instance, the SBA Area Office noted other regulatory grounds—not addressed by the OHA decision—that may require SSI to assume a share of PMA's receipts. *See supra* Section I.C. However, the Court's role in this protest is limited to reviewing the OHA's decision and does not include identifying other regulatory grounds that may require SSI to assume a share of PMA's receipts. This determination is appropriately directed to the SBA for further consideration.

## V. REMAND AND INJUNCTIVE RELIEF

This protest shall be remanded to the OHA for further proceedings consistent with this opinion. The Court retains jurisdiction over this protest during the remand period.

SSI argues that it is entitled to permanent injunctive relief because SSI "has satisfied all of the injunction factors." Pl.'s Mem. at 24. The government responds that SSI's injunctive relief request is moot since "the status quo is that DOE awarded the contract to SSI but suspended issuing the notice to proceed pending final resolution of AID's size protest." Def.'s Cross-MJAR at 13.

The Court finds that injunctive relief is not warranted at this time. Injunctive relief is reserved for extraordinary circumstances. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983). In this instance, the government has stated on the record that "DOE has provided no indication that it intends to terminate SSI's award prior to final resolution of the size protest, which would include any remand." Def.'s Reply at 6. The government further represented during oral argument that the "DOE has maintained its position that it will hold its hand until there is some final resolution, whether that comes at this Court or[,] if it has to go back to SBA[,] at SBA." July 22, 2021 Oral Arg. Tr. at 100, ECF No. 36. As result, SSI's request for injunctive relief is speculative, as there is no impending irreparable harm.

This Court presumes that government officials act in good faith. *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002). Accordingly, the Court trusts that the DOE will not terminate SSI's contract or take other action adverse to SSI's status as the awardee until this protest, including the remand, is fully resolved. However, should the DOE take adverse action prior to resolution of this protest, SSI may renew its request for injunctive relief.

## VI.     CONCLUSION

For the reasons above, Plaintiff's motion for judgment on the administrative record is **GRANTED**. Defendant's and Defendant-Intervenor's respective cross-motions are **DENIED**. The OHA decision dated April 20, 2021 affirming the Area Office Size Determination for SSI is **VACATED** and **REMANDED** for a sixty (60) day period to the OHA at 409 3rd Street, S.W., Washington, D.C., 20416. *See* RCFC 52.2(a).

Within ten (10) days of the OHA's decision on remand, the parties **SHALL FILE** notices with the Court in accordance with Rule 52.2(e) of the Rules of the Court of Federal Claims. This case is **STAYED** until further order of the Court. *See* RCFC 52.2(b)(1)(C).

Some information contained in this Opinion may be considered protected information subject to the Protective Order entered on April 28, 2021. Accordingly, the Opinion is filed **UNDER SEAL**. The parties **SHALL CONFER** and **FILE** on or before **August 27, 2021** a joint status report that: identifies the information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion**.**

**IT IS SO ORDERED.**

<u>s/ Thompson M. Dietz</u>
THOMPSON M. DIETZ, Judge